**FILED**

MAR 23 2015

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| CARMEN SLATTERY,<br><br>PLAINTIFF,<br><br>VS<br><br>SIOUX FALLS AMBULANCE, INC.<br>d/b/a RURAL/METRO AMBULANCE,<br><br>DEFENDANT. | Civ. # 15-CV-4062<br><br>**COMPLAINT**<br>(Jury Trial Demanded) |

## JURISDICTION

1) This is an equal pay, gender employment discrimination and retaliation claim arising under Section 16(c) and 17 of the Fair Labor Standards Act of 1938 ("FLSA") as amended, 29 U.S.C.A. § 216(c)–217, to enforce the requirements of the Equal Pay Act of 1963, codified as FLSA § 6(d), 29 U.S.C.A. 206(d), and pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.A. § 2000e-5(f)(1) and (3) and the Civil Rights Act of 1991, 42 U.S.C.A. § 1981(a).

2) Plaintiff Carmen Slattery ("Ms. Slattery") is an adult female who resides in Minnehaha County, South Dakota.

3) At all times relevant, Defendant, Sioux Falls Ambulance, Inc. was a subsidiary of the Rural/Metro Corporation, doing business as Rural/Metro Ambulance ("Rural/Metro") in Minnehaha County, South Dakota.

4) Rural/Metro has continuously been an employer engaged in an industry affecting commerce and has continuously employed more than twenty (20) employees engaged in commerce within the meaning of Title VII at 42 U.S.C.A. §§ 2000e(b) and (h).

5) Rural/Metro employed Ms. Slattery between June 2003 and September 6, 2012.

6) Ms. Slattery suffered an adverse employment action when she was terminated on September 6, 2012.

7) Ms. Slattery timely filed a charge of discrimination with the EEOC alleging violations of Title VII.

8) The EEOC issued Ms. Slattery a Notice of Suit Rights dated January 2, 2015.

9) All conditions precedent to the institution of this lawsuit have been fulfilled.

10) Jurisdiction is proper in this Court pursuant to 28 U.S.C.A. §§ 1331 and 1343(a)(4). Venue is proper in accordance with 28 U.S.C.A. § 1391(b)(2) and 42 U.S.C.A. § 2000e-5(f)(3). Plaintiff invokes this Court's exercise of supplemental jurisdiction pursuant to 28 U.S.C.A. § 1367.

## GENERAL ALLEGATIONS

11) During her employment, until at least September 2012, Rural/Metro engaged in unlawful employment practices at its Sioux Falls, South Dakota, facility in violation of Title VII by not paying Ms. Slattery the same wages that it paid her male co-workers because of her gender.

12) Ms. Slattery was harassed and subjected to different terms and conditions of employment because of her gender.

13) Ms. Slattery made formal gender discrimination complaints on May 5 and May 31, 2012.

14) Ms. Slattery was subject to retaliatory discharge.

15) The effect of the practices complained of in Paragraphs 11-14 above has been to deprive Ms. Slattery of equal employment opportunities and otherwise adversely affect her status as an employee because of her gender.

16) The unlawful employment practices complained of in Paragraphs 11-14 above were intentional.

17) The unlawful employment practices complained of in Paragraphs 11-14 above were done with reckless indifference to Ms. Slattery's federally protected rights.

### COUNT ONE: EQUAL PAY ACT DISCRIMINATION

18) Beginning in June 2003 and until September 6, 2012, Ms. Slattery worked for Rural/Metro as a paramedic.

19) Ms. Slattery was a successful paramedic at Rural/Metro and considered the job as her career.

20) From May 2011, to September 6, 2012, Rural/Metro did not pay Ms. Slattery for her duties and time spent as the Education Coordinator, an additional set of duties separate from her duties as a paramedic.

21) From May 2011 to July 2011, Rural/Metro did not pay Ms. Slattery for her duties and time spent as a Field Training Officer, an additional set of duties separate from her duties as a paramedic and the Education Coordinator.

22) To the best of Ms. Slattery's knowledge, at least three other males who held the Education Coordinator position prior to her had been compensated for those additional duties.

23) To the best of Ms. Slattery's knowledge, at least three other males who held Field Training Officer positions were compensated for those additional duties.

24) Rural/Metro denied Ms. Slattery vacation time when it granted other male employees' requests for vacation time; to the best of her knowledge, some of those male employees were granted vacation time despite not having vacation benefits or giving little to no notice.

25) As a result of the acts complained of above, Rural/Metro unlawfully withheld the equal payment of wages due to Ms. Slattery.

26) The unlawful pay practices complained of in Count One of this Complaint were willful, reckless and malicious.

### COUNT TWO:  DISPARATE TREATMENT BECAUSE OF GENDER

27) During her nine (9) years of employment with Rural/Metro, Ms. Slattery met her employer's reasonable performance expectations.

28) Ms. Slattery was qualified to perform the necessary duties of her position.

29) Beginning in November 2010, Ms. Slattery was subjected to negative and demeaning comments about her gender from her direct supervisor, Billy Joe Heap.

30) On or about November 29, 2010, Mr. Heap told Ms. Slattery to "Go back to the kitchen where you belong woman!"

31) On or about May 12, 2012, Mr. Heap wrote two harassing and gender degrading notes to another supervisor in regards to Ms. Slattery being a mother caring for a sick child.

32) Ms. Slattery was publicly referred to as a "bitch" by Mr. Heap during a meeting on or about April 10, 2012, and by another coworker, Thom Brude, on or about August 20, 2012.

33) Ms. Slattery was subjected to discipline for a patient complaint for which her male colleague was not similarly disciplined.  Ms. Slattery received a suspension without pay, and was ultimately terminated.  Her male colleague received full back pay for the suspension time, was re-instated and was issued a formal apology from Rural/Metro.

34) From approximately December 2010 to September 6, 2012, Ms. Slattery repeatedly used the appropriate channels within Rural/Metro to address her complaints about her male supervisors.

35) To the best of Ms. Slattery's knowledge, she was replaced with a male employee.

36) The unlawful discriminatory acts complained of in Count Two of this Complaint were willful, reckless and malicious.

## COUNT THREE:  RETALIATION

37) Ms. Slattery reported Mr. Heap's offensive comments to Mr. Heap's supervisor in December 2010.

38) Ms. Slattery began verbally reporting the discriminatory behavior to her immediate managers in March 2011.

39) When those complaints were not addressed, Ms. Slattery began sending emails reporting the behavior to the corporate-level "Operation Supervisor Group."

40) Mr. Heap commented that he wanted Ms. Slattery to be fired because she was causing problems, including making the following statement in December 2011:  "All I want for Christmas is a pink slip for Carmen."

41) Other supervisors made similar comments that Ms. Slattery "needed to go" because she was causing problems.

42) On or about April 10, 2012, when she was called a "bitch" and subjected to aggressive, threatening behavior at a company meeting, Ms. Slattery reported the incident directly to Rural/Metro's corporate compliance officer.

43) Other supervisors witnessed the April 10th incident and did not report it to anyone.

44) Rural/Metro's in-house Human Resources Representative, Scott Christensen, was one of the supervisors involved in the harassing behavior.

45) When the harassment was still not addressed, and continued to occur, Ms. Slattery reported Mr. Heap's behavior to Rural/Metro's Corporate-Level Human Resources Representative on or about May 5 and May 31, 2012. She also made reports on May 17th, July 9th and July 13th of 2012.

46) Mr. Heap was ultimately terminated for harassing Ms. Slattery in July 2012.

47) Ms. Slattery was repeatedly told that management blamed her for Mr. Heap's termination, and the workplace environment became even more hostile after his termination.

48) The hostile work environment included a publicly displayed bull's eye target graphic, online harassment, being called a "bitch" and comments that Ms. Slattery wouldn't be able to afford an attorney and Rural/Metro was "untouchable."

49) Ms. Slattery was terminated on September 6, 2012.

50) To the best of her knowledge, Ms. Slattery was replaced with a male employee.

51) The unlawful retaliatory acts complained of in Count Two of this Complaint were willful, reckless and malicious.

### COUNT FOUR:  WRONGFUL DISCHARGE & PUBLIC POLICY
### (SDCL Chapter 62-11 & -12)

52) At all times relevant to this action, Rural/Metro has represented non-discrimination and sexual harassment policies to employees in various writings, including but not limited to, personnel policies and procedure manuals. These manuals and policies formed part of Ms. Slattery's express employment contract with Rural/Metro.

53) Prior to Ms. Slattery's discharge, she had performed all conditions and duties required of her. Rural/Metro failed to adhere to the set policies and procedures in place by failing to

6

investigate alleged events and terminating Ms. Slattery without proper investigations into many of her complaints.

54) Rural/Metro materially breached Ms. Slattery's employment contract when it suspended, and then ultimately terminated, her employment in retaliation for her statutorily protected right to redress for wage and gender discrimination.

55) When Ms. Slattery complained of the behavior mentioned in Counts One, Two, and Three, she was wrongfully discharged.

56) The public policy of SDCL §§ 60-11-17.1, 60-12-15, 60-12-18 and 60-12-21 provide exceptions to the at-will employment doctrine for employees seeking redress for equal pay or gender discrimination.

57) The failure on the part of Rural/Metro to adhere to their own policies and procedures in pursuing an investigation of a patient complaint and then firing Ms. Slattery without good cause constituted a wrongful discharge.

**PRAYER FOR RELIEF**

Plaintiff Carmen Slattery prays for judgment against Defendant Rural/Metro Corporation as follows:

1) For a trial by jury on the merits of her claims;

2) For compensatory damages in such amount as the evidence at trial may show to make Ms. Slattery whole by providing appropriate back pay, liquidated damages as allowed by law and pre-judgment interest as a result of Rural/Metro's unlawful employment practices in amounts to be determined by the jury;

3) For general damages in such amount as the evidence at trial may show to make Ms. Slattery whole by providing appropriate compensation for past and future losses arising from the

7

pain, anxiety, humiliation and embarrassment suffered by Ms. Slattery as a result of Rural/Metro's unlawful employment practices in amounts to be determined by the jury;

4) For punitive damages in such an amount as the evidence at trial may show in amounts to be determined by the jury; and

5) For her costs and disbursements incurred herein, including reasonable attorney fees, and for such other and further relief as the Court may deem just.

Dated this 19th day of March 2015.

JOHNSON POCHOP & BARTLING

/Stephanie E. Pochop
Kelsea K. Sutton
405 Main St. | PO Box 149
Gregory, SD 57533
(605) 835-8391
stephanie@rosebudlaw.com
kelsea@rosebudlaw.com
*Attorneys for Plaintiff Carmen Slattery*